IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALAN FRASER,                      :    CIVIL ACTION
                                  :    NO. 03-1001
          Petitioner,             :
                                  :    CRIMINAL ACTION
     v.                           :    NO. 99-0424
                                  :
UNITED STATES OF AMERICA,         :
                                  :
          Respondent.             :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              JUNE 21, 2005


          Before the Court is the motion of Petitioner, Alan

Fraser, to vacate, set aside or correct sentence, pursuant to 28

U.S.C. § 2255.  For the reasons that follow Petitioner's motion

will be denied.


I.   BACKGROUND

          On July 22, 1999, Petitioner, Alan Fraser

("Petitioner") was indicted on fourteen counts, each count

charging Petitioner with an offense relating to distribution,

receipt, shipment or possession of child pornography, in

violation of 18 U.S.C. § 2252.[1]  Nearly two months later, on

---

[1] The indictment charged Petitioner specifically with two
counts of distributing visual depictions of minors engaged in
sexually explicit conduct, in violation of 18 U.S.C. §
2252(a)(2), nine counts of receiving visual depictions of minors
engaged in sexually explicit conduct, in violation of 18 U.S.C §
2252(a)(2), and one count each of conspiracy to transport, ship,

September 20, 1999, Petitioner pled guilty to Count Four of the

Indictment charging specifically that:

> On or about September 26, 1994, in the
> Eastern District of Pennsylvania, defendant
> ALAN FRASER did knowingly transport and ship
> in interstate commerce by computer visual
> depictions, that is a zip file entitled
> "4.ZIP" containing approximately 4 graphic
> image files, the production of which involved
> the use of minors engaging in sexually
> explicit conduct and which visual depictions
> were of such conduct[, i]n violation of Title
> 18, United States Code, Section 2252(a)(1).

(Indictment at 26.)  (In exchange for Petitioner's agreeing to

plead guilty to Count Four, the Government moved to dismiss the

remaining counts.)  Count Four also incorporated by reference

Paragraphs One through Seven and Nine through Sixteen of Count

One of the Indictment, which detailed a conspiracy of certain

American Online ("AOL") subscribers, including Petitioner, to

exchange via electronic mail ("email") and mail image files

depicting minors and adults in sexually explicit poses and

depicting minors and adults engaged in real and simulated sex

acts with other minors and adults.  <u>Id.</u>  Petitioner's alleged

involvement in the conspiracy occurred during the period of

August 26, 1994 to August 22, 1995.  <u>Id.</u> at 3.

------------------------------------------------------------

receive, and distribute visual depictions of minors engaged in
sexually explicit conduct, in violation of 18 U.S.C. §
2252(b)(1), transporting and shipping in interstate commerce
visual depictions of minors engaged in sexually explicit conduct,
in violation of 18 U.S.C. § 2252(a)(1), and possessing items
containing visual depictions of minors engaged in sexually
explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B).

In pleading guilty, Petitioner entered into a plea agreement with the Government in which Petitioner agreed to plead guilty to:

>  Count Four of the Indictment charging him with transporting and shipping in interstate commerce visual depictions, the production of which involved the use of minors engaging in sexually explicit conduct and which visual depictions were of such conduct, in violation of Title 18, United States Code, Section 2252(a)(1), all arising from his receiving and sending electronic images of minors engaged in sexually explicit conduct by computer.

(Guilty Plea Agmt. at 1.)   In the plea agreement, Petitioner also agreed to an upward departure from the Sentencing Guidelines, pursuant to U.S.S.G. § 2G2.2(b)(1), "because the material involved a prepubescent minor or a minor under the age of twelve years." Id. at 4.

During the plea colloquy Petitioner answered affirmatively to the following inquiry:

>  Do you understand that the essential elements of the crime to which you are pleading guilty today, and which the Government would have to prove at trial beyond a reasonable doubt are the following[:]
>  One: That the defendant knowing[ly] transported a visual depiction in interstate commerce by any means, including by computer or by mail.
>  Two: That the production of a visual depiction involved the use of a minor engaging in sexually explicit conduct.
>  Three: That the visual depiction was of such . . . conduct?

3

Do you understand those to be the essential
elements of the crime?

(Plea Hr'g Tr. (9/20/99) at 19.)  Further, at the change of plea
hearing, the Government summarized for the Court the factual
basis for the plea, which Petitioner acknowledged as being
essentially correct.  The Government explained that the charges
against Petitioner stemmed from a joint investigation conducted
by the Federal Bureau of Investigation ("FBI") and Florida
Department of Law Enforcement that began in 1994.  Id. at 19-20.
The investigation focused on the exchange of graphic image files
depicting minors engaging in sexually explicit conduct by AOL
members.  Id. at 20.  The graphic image files were being traded
back and forth as attachments to email.  Id.  Petitioner was
among those exchanging graphic image files.  Id.

According to the Government, Petitioner's participation
was uncovered when Petitioner transmitted images to Agent Doug
Raymond, a Florida Department of Law Enforcement agent who was
involved in the investigation.  Id. at 20-21.  Agent Raymond
received approximately 111 images attached to emails during the
course of the investigation.  Id.  Petitioner transmitted and
received many of these images.  Id.  The particular images that
Petitioner pled guilty to in Count 4 all relate to activity on or
about September 26, 1994 when Petitioner, using the computer in
his residence in Lansdowne, Pennsylvania, uploaded a zip file
named "4.zip," consisting of four graphic images.  Id. at 21.

4

Agent Raymond was only able to view three of the four images because one was corrupted.  Id.  The three uncorrupted files have been placed under seal.  Id.  "They each depict a prepubescent minor engaged in sexually explicit conduct."  Id.  The 4.zip file was sent to a number of recipients, including a confidential informant.  Id.

The Government also stated during the change of plea hearing that in August 1995, FBI agents interviewed Petitioner at his home at which time Petitioner admitted to his involvement in trading pornography by computer.  Id. at 22.  Petitioner also consented to a search of his residence including two computers that were located therein.  Id.  Upon searching the two computers, and numerous floppy disks containing back up sets that Petitioner admitted creating, investigators uncovered, inter alia, the three images that were uploaded on September 26, 1994 and a fourth image bearing the same name as the image that was corrupted.  Id.

On April 19, 2000, Petitioner was sentenced to seventeen months imprisonment, three years supervised release, a $1,000 fine and a $50 special assessment.  Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Third Circuit, which affirmed the district court's Judgment and Commitment Order on June 26, 2002.  United States v. Fraser, 42 Fed.Appx. 532 (3d Cir. 2002).  Petitioner then filed

the instant petition for writ of habeas corpus, pursuant to 28
U.S.C. § 2255, on February 24, 2003.

Petitioner raised three arguments in his counseled
petition. First, Petitioner argued that he was charged and
convicted under the Child Pornography Protection Act ("CPPA") of
1996 for conduct that occurred in 1994 and 1995, in violation of
article I, section 9, clause 3 of the United States Constitution
(the ex post facto clause). Second, Petitioner argued that his
conviction was unconstitutional because the CPPA was ruled
unconstitutional on First Amendment grounds in Ashcroft v. Free
Speech Coalition, 535 U.S. 234 (2002). Finally, Petitioner
argued that counsel's failure to assert a defense based on the ex
post facto clause had the effect of denying Petitioner of his
right to counsel, in violation of the Sixth Amendment to the
Constitution.

On February 17, 2004, Petitioner filed a motion for a
plenary hearing. In the last numbered paragraph of that motion,
Petitioner raised what appeared to be a new argument not raised
in his initial petition. Specifically, Petitioner argued that
the underlying criminal investigation's evidence, the Court
record of Petitioner's Indictment and guilty plea colloquy and
the pleadings in the instant petition for writ of habeas corpus
"lacks the obvious legal requirement of a victim." (Pet.'s Mot.
for Plenary Hr'g, at ¶ 5.)

6

The Court granted Petitioner's request for a plenary hearing and at a hearing on March 17, 2004, Petitioner's counsel again argued that nowhere in the underlying investigation or guilty plea colloquy is there a victim. (Hr'g Tr. (3/17/04) at 3-5.) Petitioner's counsel explained that the images that Petitioner was convicted of transporting were virtual images and not images of actual persons, id. at 4-5, and therefore the exchange of those images was legitimate First Amendment expression, id. at 12. Petitioner's counsel then told the Court that he was withdrawing his other arguments. Id. at 5.

In a supplemental surreply filed on April 8, 2004, Petitioner clarified that the theory he is relying on in pursuit of habeas relief is one of "actual innocence." In support of his actual innocence claim, Petitioner argued that the guilty plea factual basis supports a charge under the CPPA, which was ruled unconstitutional in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), and not a charge under the Protection of Children Against Sexual Exploitation Act of 1977 as the Government contends. By raising this latter argument, it appears as if Petitioner is reasserting his ex post facto claim.

At a second plenary hearing held on September 20, 2004, Petitioner's counsel again argued that Petitioner pled guilty to a fact pattern supporting a charge under the CPPA, (Hr'g Tr. (9/20/04) at 13-14.), suggesting that Petitioner still wishes to

7

pursue the his ex post facto claim.  Additionally, in support of
Petitioner's assertion that there is no victim in this case,
Petitioner's counsel argued that if Petitioner is asked to
testify he will say that everything in his computer was virtual.
Id. at 4-5.  According to Petitioner's counsel, because
Petitioner's hard drives cannot now be located this assertion
cannot be confirmed or refuted.  See id. at 4, 9-10.
Petitioner's counsel also added a new twist to his argument that
there was no victim, arguing that Petitioner has indicated that
certain images at issue derived from the Netherlands where the
age of consent is twelve years old.  Id. at 7-8.  Thus,
Petitioner's counsel argues, these photographs were not
prohibited by the convicting statute since they derived from a
jurisdiction where it was not illegal to take them.  Id. at 9.

        To refute Petitioner's actual innocence argument, the
Government called to the stand at the second plenary hearing
Richard W. Vorder Bruegge, Ph.D., an employee of the FBI.  Dr.
Vorder Bruegge was qualified as an expert in the field of
forensic photographic analysis.  Id. at 18.  He testified
specifically about the Child Exploitation and Obscenity Reference
File ("CEORF"), "a collection of digital images that are
representations of images that were present in magazines
published in the 1970s and 1980s."  Id. at 16.  The CEORF, which
Dr. Vorder Bruegge is responsible for managing, is used as a

reference to determine the origin of images that law enforcement officials come across in case work.  Id. at 16-17.  Dr. Vorder Bruegge testified that none of the images in the CEORF were computer-generated, id. at 22, and only 6 out of over 10,000 images show signs of image manipulation, id. at 27, which is a method of altering an images' content via computer or traditional non-computerized photographic techniques, id. at 22-24.

    By referencing the CEORF, Dr. Vorder Bruegge was able to identify 37 separate photographs contained on 25 different pages of Grand Jury Exhibit 1 in this case that were found in the CEORF.  Id. at 21.  Further, Dr. Vorder Bruegge testified that none of the images he examined in this case were computer-generated.  Id. at 22.  In fact, according to Dr. Vorder Bruegge, in 1995 none of the images available over the Internet would have been totally computer-generated and within the CEORF.  Id. at 27.  Ultimately, Dr. Vorder Bruegge opined to a reasonable degree of certainty in the field of forensic photographic analysis that each of the images in the grand jury exhibits depicts actual minors engaged in sexually explicit activity.  Id. at 29.  It is true that Dr. Vorder Bruegge admitted that some of the images identified from the grand jury exhibits in this case originated from countries that did not proscribe the creation of child pornography at the time those images were created.  Id. at 27-28.  However, by the same token Dr. Vorder Bruegge testified that some

9

of the images in the grand jury exhibits depict individuals who
have been identified by the National Center for Missing and
Exploited Children in their Child Victim Identification Program
and in the FBI's Child Victim Identification Program.  Id. at 26,
29.


II.  DISCUSSION

        The various arguments raised by Petitioner in his
initial habeas petition, subsequent court filings, and two
plenary hearings distill down to two issues for the Court to
address: (1) whether Petitioner's conviction violated the ex post
facto clause of the Constitution and (2) whether Petitioner was
convicted in violation of the First Amendment to the
Constitution.  These issues will be addressed seriatim.


        A.   Did Petitioner's Conviction Violate the Ex Post
             Facto Clause of the Constitution?

        Petitioner pled guilty to transporting and shipping in
interstate commerce by computer visual depictions, the production
of which involved the use of minors engaged in sexually explicit
conduct and which depictions were of such conduct.  The
underlying conduct for which Petitioner was convicted occurred on
September 26, 1994.  Petitioner contends that the statute under
which he was convicted "became law with the passage of the Child
Pornography Protection Act of 1996."  Therefore, Petitioner

claims, his conviction violates article I, section 9, clause 3 of the Constitution prohibiting Congress from passing <u>ex post facto</u> laws.

Petitioner's <u>ex post facto</u> claim misses the boat.  The statutory provision under which Petitioner was convicted, 18 U.S.C. § 2252(a)(1), derives from the Protection of Children Against Sexual Exploitation Act of 1977.  <u>See Free Speech Coalition v. Reno</u>, 198 F.3d 1083, 1087 (9th Cir. 1999).  At the time Petitioner committed his offense in 1994 this provision prohibited any person from "knowingly" transporting or shipping in interstate commerce by computer any visual depiction if "the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct," and "such visual depiction is of such conduct."  18 U.S.C. § 2252(a)(1) (1994). Therefore, Petitioner was not prosecuted for conduct that was legal when committed.  His conduct was prohibited <u>ex ante</u> rather than <u>ex post facto</u>.

Petitioner's claim that he was prosecuted under the Child Pornography Protection Act of 1996 is without merit.  The CPPA expanded existing child pornography law to prohibit the use of computer technology to produce pornography containing images that look like children ("virtual" child pornography).  <u>Free Speech Coalition v. Reno</u>, 198 F.3d at 1088.  It contains a provision, 18 U.S.C. § 2252A(a)(1), similar to 18 U.S.C. §

2252(a)(1) to which Petitioner pled guilty.  However, at all
critical stages of this case (indictment, guilty plea agreement,
and guilty plea hearing), Petitioner was charged or acknowledged
being charged under 18 U.S.C. § 2252(a)(1), a provision in effect
at the time Petitioner committed the offending conduct.  The
Indictment specifically alleged that Petitioner transported or
shipped in interstate commerce by computer visual depictions,
"the production of which involved the use of minors engaging in
sexually explicit conduct and which visual depictions were of
such conduct[,] in violation of Title 18, United States Code,
Section 2252(a)(1)."  (Indictment at 26.)  The guilty plea
agreement likewise indicated that Petitioner was pleading guilty
to transporting and shipping in interstate commerce visual
depictions, the production of which involved the use of minors
engaging in sexually explicit conduct and which depictions were
of such conduct, in violation of 18 U.S.C. § 2252(a)(1).
Further, at the plea hearing Petitioner acknowledged the elements
of the offense to which he was pleading guilty to be:

> One: That the defendant knowing[ly]
> transported a visual depiction in interstate
> commerce by any means, including by computer
> or by mail.
> Two: That the production of a visual
> depiction involved the use of a minor
> engaging in sexually explicit conduct.
> Three: That the visual depiction was of such
> . . . conduct?

(Plea Hr'g Tr. (9/20/99) at 19.)   These elements compose a violation of 18 U.S.C. § 2252(a)(1) as that provision existed at the time of Petitioner's offense.   Moreover, the factual basis for Petitioner's guilty plea supports conviction under the 1994 version of 18 U.S.C. § 2252(a)(1).   Specifically, the Government stated at the plea hearing, and Petitioner accepted as true, that on September 26, 1994 Petitioner uploaded images from his computer each depicting a prepubescent minor engaged in sexually explicit conduct and he emailed these images as attachments to multiple recipients.   (Plea Hr'g Tr. (9/20/99) at 21.)

Therefore, it is clear that Petitioner was charged and convicted under 18 U.S.C. § 2252(a)(1) as it existed on September 26, 1994, the date Petitioner committed his offending conduct. Hence, Petitioner's conduct was prohibited by law when committed. Because the Constitution's prohibition of ex post facto laws protects a person from conviction for activity which was innocent when committed, Petitioner cannot invoke that rule here.[2]

_____

[2] Petitioner has procedurally defaulted his ex post facto claim by failing to raise it on direct appeal.   He can overcome this default by demonstrating cause and actual prejudice or that he is actually innocent.   Bousley v. United States, 523 U.S. 614, 622 (1998).   Notably, ineffective assistance of counsel is cause for a procedural default, Murray v. Carrier, 477 U.S. 478, 488 (1986), and Petitioner has argued that his counsel was ineffective for failing to raise an ex post facto argument earlier.   However, the Court need not delve into this ineffective assistance of counsel issue since Petitioner's ex post facto argument fails on the merits.

B.    Was Petitioner convicted in violation of the First
      Amendment to the Constitution?

      In <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234

(2002) (<u>Ashcroft</u>), the United States Supreme Court struck down

two statutory provisions of the CPPA prohibiting virtual child

pornography.  Specifically, the Court took issue with section

2256(8)(B) of Title 18 of the United States Code, which

prohibited any visual depiction that "is, or appears to be, of a

minor engaging in sexually explicit conduct," and section

2256(8)(D), which prohibited any visual depiction that was

"advertised, promoted, presented, described, or distributed in

such a manner that conveys the impression that the material is or

contains a visual depiction of a minor engaging in sexually

explicit conduct."  In finding that both provisions are overbroad

and unconstitutional, <u>id.</u> at 1406, the Court explained that those

provisions prohibit "speech that records no crime and creates no

victims by its production," <u>id.</u> at 1402.  The Court reaffirmed

that "where the speech is neither obscene nor the product of

sexual abuse, it does not fall outside the protection of the

First Amendment."[3]  Id. at 1402 (citing New York v. Ferber, 458 U.S. 747, 764-65 (1982)).

Relying on Ashcroft, Petitioner argued in his initial habeas petition that his conviction cannot stand because the CPPA was ruled unconstitutional on First Amendment grounds.  While, as explained above, Petitioner was not convicted under the CPPA, it is clear that Petitioner challenges his conviction on First Amendment grounds.  Petitioner argued in subsequent filings and at both plenary hearings that there was no victim in this case, i.e., the images that he admitted transporting and shipping were not depictions of actual children.  In essence, Petitioner's argument is that his conduct in this case constitutes protected speech under the First Amendment.

Because Petitioner did not raise his First Amendment claim on direct review, this claim is procedurally defaulted.  To avoid default of this claim, Petitioner must show cause and prejudice or that he is actually innocent.  Bousley v. United States, 523 U.S. 614, 622 (1998).  Petitioner has not alleged cause for his failure to raise a First Amendment claim earlier.

_____

[3] The Supreme Court previously held that neither the production and distribution nor the possession and viewing of pornography involving the use of actual children is protected speech under the First Amendment.  New York v. Ferber, 458 U.S. 747, 764-65 (1982) (holding that the production and distribution of child pornography is not constitutionally protected free speech); Osborne v. Ohio, 495 U.S. 103, 111 (1990) (holding that a state may constitutionally proscribe the possession and viewing of child pornography).

Moreover, while the Supreme Court has held that "a claim that 'is so novel that its legal basis is not reasonably available to counsel' may constitute cause," id. at 622 (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)), Petitioner's First Amendment claim here is not novel as it was raised and addressed in published cases decided prior to Petitioner's guilty plea in this case.  See, e.g., United States v. Hilton, 167 F.3d 61 (1st Cir. 1999) (upholding the constitutionality of the CPPA in the face of a First Amendment challenge), United States v. Fox, 74 F. Supp.2d 696 (E.D. Tex. 1999) (same).  Even if Petitioner perceived such a claim at the time of his plea as futile, the Supreme Court has made clear that the futility of a particular legal argument "cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." Bousley, 523 U.S. at 623 (internal quotations omitted). Consequently, Petitioner has not established cause in this case. Because he has not established cause, he cannot satisfy the cause and prejudice exception to procedural default.

        Petitioner can obtain review of his First Amendment claim only if he can prove actual innocence.  Ordinarily, to assert a credible claim of actual innocence, a petitioner must come forward with "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.

16

Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S. 298, 324 (1995). Once new evidence is brought forth, to establish actual innocence, a petitioner must demonstrate that, "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (quoting Schlup, 513 U.S. at 329). "Thus, in habeas jurisprudence, 'actual innocence means factual innocence, not mere legal insufficiency.'" Garth, 188 F.3d at 107 (quoting Bousley, 523 U.S. at 623). Stated differently, "'actual innocence . . . means that the person did not commit the crime.'" Id. (quoting Johnson v. Hargett, 978 F.2d 855, 860 (5th Cir. 1992)). This understanding is key because it means that "the Government is not limited to the existing record to rebut any showing that petitioner might make." Bousley, 523 U.S. at 624. Rather, the Government may present "any admissible evidence of petitioner's guilt" whether or not such evidence was presented during the petitioner's guilty plea colloquy. Id.

        Petitioner has not come forward with any evidence, new or otherwise, to show that the images transported and shipped by him on September 26, 1994 via computer were anything other than images of actual children engaged in sexually explicit conduct. Petitioner's counsel instead asserts that if Petitioner is asked

17

to testify he will say that everything in his computer was
virtual.[4]  (Hr'g Tr. (9/20/04) at 4-5.)  This prospective
testimonial evidence is insufficient to prove actual innocence.
The Third Circuit has held that a petitioner's own late-proffered
testimony is not "new" where it was available at trial but not
presented to the jury by decision of the petitioner.  Hubbard v.
Pinchak, 378 F.3d 333, 340 (3d Cir. 2004).  While disposition of
the underlying matter in this case manifested through a guilty
plea, and not through a jury trial, the principle espoused in
Hubbard is equally, if not more so, applicable to Petitioner's
prospective testimony here.  Petitioner had a choice whether to
proceed to a jury trial and present his testimony or to plead
guilty and forego such an opportunity.  Petitioner chose the
latter option.  "That choice does not open the gateway."  Id.

        Furthermore, in cases, such as this, "where the
Government has forgone more serious charges in the course of plea
bargaining, petitioner's showing of actual innocence must also
extend to those charges."  Bousley, 523 U.S. at 624.  Here,
Petitioner has offered nary a scintilla of evidence of his

---

        [4]  While this assertion cannot be verified because
Petitioner's hard drives are now missing, there is no evidence
that the Government caused the unavailability of the hard drives
in bad faith.  This is significant because the Third Circuit has
held that "even when actions by the prosecution appear to deprive
a criminal defendant of his constitutional right to present a
defense, no remedy will lie for such infringement absent a
showing that the government has caused the unavailability of
material evidence and has done so in bad faith."  United States
v. Santtini, 963 F.2d 585, 596-97 (3d Cir. 1992).

innocence with respect to the 13 counts of the Indictment
dismissed by the Court pursuant to the plea agreement.  On the
flip side, the Government has presented affirmative evidence
showing that the visual depictions that Petitioner was charged
with exchanging or possessing in all 14 counts of the Indictment
were images of actual children engaging in sexually explicit
conduct.  Specifically, the Government called Dr. Vorder Bruegge
at the second plenary hearing, an expert in forensic photographic
analysis, (Hr'g Tr. (9/20/04) at 18), who explained that multiple
images in the grand jury exhibits used to indict Petitioner match
images found in the Child Exploitation and Obscenity Reference
File, id. at 21.  According to Dr. Vorder Bruegge, none of the
images in the CEORF were computer-generated, id. at 22, and only
a very small percentage show signs of image manipulation, id. at
27.

          Dr. Vorder Bruegge also testified at the second plenary
hearing that none of the images he examined in this case were
computer-generated.  Id. at 22.  Moreover, he opined that in 1995
none of the pornographic images depicting children engaged in
sexually explicit conduct that were available over the Internet
would have been totally computer-generated and within the CEORF.
Id. at 27.  Thus, Dr. Vorder Bruegge opined, to a reasonable
degree of professional certainty, that each of the images
composing the grand jury exhibits depict actual minors engaged in

sexually explicit activity.  Id. at 29.  While some of those
images may have originated from countries that did not proscribe
the creation of child pornography at the time the images were
created, id. at 27-28, Dr. Vorder Bruegge testified that there
were other grand jury exhibit images that depicted individuals
who have been identified by two prominent national victims'
databases, id. at 26, 29.

Based on Dr. Vorder Bruegge's testimony and
Petitioner's failure to come forward with any new evidence of his
innocence, the Court concludes that a reasonable juror could have
found Petitioner guilty of at least some of the counts listed in
the Indictment.  Consequently, Petitioner cannot show that he is
actually, factually, innocent, ergo, he cannot collaterally
attack his conviction on First Amendment grounds.

Even if Petitioner had not defaulted on his First
Amendment claim, this claim would fail on the merits.  First, the
statute under which Petitioner was convicted did not contain the
CPPA provisions, or provisions similar thereto, that were ruled
unconstitutional in Ashcroft.  Significantly, only the provisions
of the CPPA proscribing virtual child pornography, not the CPPA
in its entirety, were struck down in Ashcroft.  See United States
v. Kelly, 314 F.3d 908, 910-12 (7th Cir. 2003) (holding that
Ashcroft did not invalidate the entire CPPA, but only those
portions of it that encompass virtual child pornography).  Here,

the statutory provision under which Petitioner was charged and
convicted did not proscribe virtual child pornography.  Moreover,
in Petitioner's case, the record is devoid of any mention of
virtual pornography.  To the contrary, the record is replete with
indications that the depictions involved actual children.  The
Indictment, to which Petitioner pled guilty, charged that
Petitioner knowingly transported and shipped 4 graphic image
files, "the production of which involved the use of minors
engaging in sexually explicit conduct and which visual depictions
were of such conduct."  (Indictment at 26.)  In the plea
agreement signed by Petitioner, Petitioner agreed to plead guilty
to transporting and shipping visual depictions "the production of
which involved the use of minors engaging in sexually explicit
conduct and which depictions were of such conduct."  (Guilty Plea
Agmt. at 1.)  Also in the plea agreement, Petitioner stipulated
that an upward departure was warranted, pursuant to U.S.S.G. §
2G2.2(b)(1), "because the material involved a prepubescent minor
or a minor under the age of twelve years."  Id. at 4.  At the
plea hearing, Petitioner acknowledged awareness of the elements
of the offense, among which is that the production of the visual
depiction "involved the use of a minor engaging in sexually
explicit conduct."  (Plea Hr'g Tr. (9/20/99) at 19.)  Also at the
plea hearing, Petitioner acknowledged that the Government's
rehearsal of the factual basis for his guilty plea was

essentially correct.  The Government had stated that the images that Petitioner pled guilty to transporting "each depict a prepubescent minor engaged in sexually explicit conduct."  Id. at 21.

Based on this record, the Court concludes that Petitioner was charged with, and pled guilty to, transporting and shipping child pornography involving the use of actual children. Therefore, Petitioner's conduct was not speech protected by the First Amendment.


III. CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate, set aside or correct the sentence, pursuant to 28 U.S.C. § 2255, will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALAN FRASER, | : | CIVIL ACTION |
| | : | NO. 03-1001 |
| Petitioner, | : | |
| | : | CRIMINAL ACTION |
| v. | : | NO. 99-0424 |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |

ORDER

**AND NOW**, this **21st** day of **June, 2005,** upon consideration of the petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2255, it is hereby **ORDERED** that the petition is **DENIED.**

**IT IS FURTHER ORDERED** that the case shall be marked **CLOSED.**

**AND IT IS SO ORDERED.**

_____

**EDUARDO C. ROBRENO, J.**